UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL MEDICINE, P.C., *et al.*,

     Plaintiffs,

                                 Case No. 22-cv-11976

v.                             Hon. Matthew F. Leitman

SECRETARY OF THE U.S. DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

     Defendant.

                                                                      /

## ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF No. 31) AND (2) TERMINATING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 32) AS MOOT

     The Plaintiffs in this action are seven suppliers of medical care under the federal Medicare program and the company that performs the billing work for the suppliers. In 2022, the Center for Medicare and Medicaid Services ("CMS"), acting as the designee of Defendant the Secretary of Health and Human Services (the "Secretary"), suspended all Medicare reimbursement payments to Plaintiffs. CMS did so because it received what it regarded as a credible allegation that Plaintiffs had committed fraud in connection with their Medicare billings. At the same time that CMS suspended Plaintiffs' reimbursement payments, it also reversed several electronic transfers of funds that it had made to Plaintiffs.

On August 23, 2022, Plaintiffs filed this action against the Secretary. (*See* Compl., ECF No. 1; First Am. Compl., ECF No. 29.) Plaintiffs allege that CMS' actions amount to violations of the Medicare Act, 42 U.S.C. § 1395, *et seq*., the Due Process Clause of the Fifth Amendment, and 31 C.F.R. Part 201, a regulation that governs the reversal of electronic funds transfers. (*See id.*)

Two motions are now pending before the Court: the Secretary's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 31) and Plaintiffs' Motion for Partial Summary Judgment (ECF No. 32). The Secretary argues that the Court lacks subject-matter jurisdiction over Plaintiffs' claims and, in the alternative, that the claims fail on the merits. Plaintiffs argue that they are entitled to judgment as a matter of law on their claim that CMS violated 31 C.F.R. Part 210 when CMS reversed the electronic funds transfers that it had made to Plaintiffs.

For the reasons explained below, the Secretary's motion is **GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' motion is **TERMINATED AS MOOT** because the Court is dismissing the claim on which Plaintiffs seek summary judgment.

# I

## A

Before turning to the two pending motions, the Court begins with a brief review of the suspension and recoupment procedures under Medicare.  This review helps to place the facts underlying this dispute in context.

### 1

"Medicare is a federal health insurance program that provides health insurance benefits to people 65 years of age or older, disabled people, and people with end-stage renal disease." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir. 2008) (citing 42 U.S.C. § 1395c).  Medicare pays for items and services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A).

Congress has provided the Secretary authority to monitor, regulate, and review these payments in order to ensure that they are only issued for "reasonable and necessary" items and services. *See*, *e.g.*, 42 U.S.C. §§ 1395hh(a)(1), 1395ddd.  Pursuant to that authority, the Secretary has promulgated detailed regulations establishing and implementing procedures to combat Medicare billing fraud. *See* 42 C.F.R. Part 405, Subpart C.  Two of those procedures are relevant here: suspension and recoupment.

The regulations authorize the Secretary to temporarily suspend and withhold a supplier's Medicare payments when the Secretary receives "a credible allegation of fraud" against the supplier. 42 U.S.C. § 1395y(o)(1). *See also* 42 C.F.R. § 405.371(a)(2). "Allegations are considered to be credible when they have indicia of reliability." 42 C.F.R. § 405.370(a)(3).  Credible allegations may come "from any source," including "civil false claims cases." *Id.*  The purpose of a suspension based upon a credible allegation of fraud is to give the Secretary an opportunity "to verify whether, and how much, payment was actually due the provider for the past claims and to ensure that, if a provider or supplier was overpaid, sufficient funds are available to recover the overpayment." 61 Fed. Reg. 63740, 63742-43 (Dec. 2, 1996).

The Secretary may impose a suspension based upon a credible allegation of fraud with or without advanced notice to the supplier. *See* 42 C.F.R. § 405.372(a)(3) - (a)(4).  Where "a suspension of payment is put into effect without prior notice," the Secretary "must, once the suspension is in effect, give the provider or supplier an opportunity to submit a rebuttal statement [that explains] why the suspension should be removed." 42 C.F.R. § 405.372(b)(2).  The Secretary then reviews the rebuttal statement and "determine[s] whether the facts … justify the termination of the suspension." 42 C.F.R. § 405.375(a).  After the Secretary considers the arguments in the rebuttal statement, he sends the supplier a written notice with

"specific findings on the conditions upon which the suspension is initiated, continued, or removed and an explanatory statement of the determination." 42 C.F.R. § 405.375(b)(2). Any decision by the Secretary to reject the rebuttal statement and continue the suspension during the investigation "is not appealable." 42 C.F.R. § 305.375(c). And if the Secretary continues the suspension, it remains in effect so long as the investigation is pending. *See* 42 C.F.R. §§ 405.370(a), 405.372(d)(3)(i) – (ii). During the term of the suspension, the payments that would otherwise be made to the supplier are "set aside, as if in escrow, until the investigation is completed." *Cplace Springhill SNF, LLC v. Burwell*, 2015 WL 1849499, at *3 (W.D. La. Apr. 22, 2015); *True Health Diagnostics, LLC v. Azar*, 392 F.Supp.3d 666, 677 (E.D. Tex. 2019) ("During the suspension period [….] [t]he allowable amounts are set aside, effectively held in escrow, until the investigation is completed"). *See also* 42 C.F.R. § 305.372.

At the conclusion of the Secretary's investigation into a claim that a supplier committed fraud, the Secretary must "determin[e] … whether an overpayment exists" (the "Overpayment Determination"). 42 C.F.R. § 405.372(c)(2)(i). *See also VCP Home Health Care Agency, Inc. v. Sebelius*, 2011 WL 13290666, at *5 (N.D. Tex. Feb. 10, 2011) (explaining that the language of 42 C.F.R. § 405.372(c) "clearly indicates" that an investigation "culminates" in the issuance of an Overpayment Determination). If the Secretary issues an Overpayment Determination and

concludes that a supplier has been overpaid, the Secretary may then seek what is known as a "recoupment" from the supplier.  A recoupment is a "recovery by Medicare of any outstanding Medicare debt by reducing present or future Medicare payments and applying [any] amount withheld to the indebtedness." 42 C.F.R. § 405.370.

2

The Overpayment Determination plays a second critical role in the claims administration process: it triggers a supplier's right to begin the administrative appeal process. *See* 42 U.S.C. § 1395ff(b); 42 C.F.R. § 405.904(a)(2). *See also True Health Diagnostics*, 392 F.Supp.3d at 661 (explaining that the issuance of an "overpayment determination triggers the multi-step administrative appeals process for a provider or supplier to follow if it is dissatisfied with the initial overpayment determination").  As one district court has explained, a supplier seeking to establish that it has not been overpaid by Medicare (as a result of fraud or some other reason) has "no claim to present to the Secretary for administrative review" unless and until the Secretary "makes an overpayment determination." *VCP Home Health Care Agency*, 2011 WL 13290666, at ** 5-6.

The appeal from an Overpayment Determination consists of four steps.  First, a supplier may seek a "redetermination" of the Overpayment Determination from a Medicare Administrative Contractor ("MAC"). 42 C.F.R. § 405.948.  At this first

6

stage of an administrative appeal, the MAC conducts an "independent review" of the relevant evidence and determines whether the initial determination of overpayment was erroneous. *Id*.  If the supplier is not satisfied with the MAC's redetermination, it may next seek reconsideration from a Qualified Independent Contractor (a "QIC"), which again reviews any evidence that the supplier provides and reaches an independent determination. *See* 42 C.F.R. §§ 405.960, 405.966(a). If the QIC denies reconsideration, the supplier may then appear before an administrative law judge, who is authorized to conduct a *de novo* review of the Overpayment Determination. *See* 42 C.F.R. §§ 405.1000(a), 405.1042(a).  If the supplier again fails to obtain a favorable ruling, it finally may seek review from the Medicare Appeals Council, which issues the Secretary's final decision. *See* 42 C.F.R. §§ 405.1100(a), 405.1130.  Once the supplier has exhausted this four-step appeal process (or otherwise shows that exhaustion is not required, *see below* at Section (II)(B)), it may then seek judicial review of the Overpayment Determination. *See* 42 U.S.C. §§ 405(g)-(h), 1395ff(b)(1)(A); 42 C.F.R. §§ 405.1130, 405.1136.

## B

The Court now returns to the facts of this case.  Plaintiffs City Medical Partners, P.A., General Medicine of North Carolina, P.A., Integrated Medical Partners, P.A., Metropolis Medical Partners, P.A., National Medical Partners, P.A., Regional Medical Partners, P.A, and Sigma Haggerty Medical, P.A. (collectively,

the "Supplier Plaintiffs") are healthcare providers that are registered as suppliers under the Medicare program. (*See* First Am. Compl., ECF No. 29, PageID.456, 468-69.)  The Supplier Plaintiffs provide "post-hospitalist and geriatric medical care" to about 5,000 Medicare beneficiaries each month. (*Id.* at ¶¶ 4, 47, PageID.460, 469.) Plaintiff General Medicine, P.C., provides administrative support, including billing services, to the Supplier Plaintiffs. (*See id.* at ¶3, PageID.460.)

## C

On March 30, 2022, the United States filed a civil false claims action in the United States District Court for the Southern District of Illinois alleging that Plaintiffs and several related entities "engaged in a multi-million-dollar scheme to defraud Medicare through the billing of visits with nursing facility and assisted living facility residents" (the "Related Case"). (*See* First Am. Compl., *United States of America v. General Medicine, P.C., et al.*, Case No. 22-cv-00651, S.D. Ill. July 28, 2022, ECF No. 29, PageID.1808-1809.)  In the Related Case, the Government accused Plaintiffs of "play[ing] a numbers game designed to bill as many patient visits as possible, regardless of whether those visits were actually performed or documented or medically necessary" and "[seeking] payment at the highest possible rates when the services did not meet the requirements for those billing codes." (*Id.*, PageID.1809.)

In April 2022, the Office of Inspector General for the Department of Health and Human Services concluded that the allegations in the Related Case constituted credible allegations of fraud, and it requested that CMS, acting as the Secretary's designee, suspend all Medicare payments to Plaintiffs. (*See* Karen Roe Decl. at ¶6, ECF No. 24-2, PageID.378.)  In August 2023, CMS acted on that recommendation and suspended Medicare payments for (1) services Plaintiffs had previously rendered to Medicare patients and (2) any services Plaintiffs would provide to Medicare patients going forward.  CMS also reversed approximately $95,000 in electronic funds transfers that it had sent Plaintiffs to pay for services Plaintiffs had provided (the "Electronic Payment Reversals"). (*See* First Am. Compl. at ¶¶ 85-87, ECF No. 29, PageID.484; Aff. of Thomas Prose at ¶ 40, ECF No. 29-1, PageID.512.)

On August 4, 2022, CMS mailed notices of the suspensions to Plaintiffs. (*See* Suspension Notices, ECF No. 2-8, PageID.136-158.)  In the notices, CMS informed Plaintiffs that the payment suspensions had gone into effect on August 2, 2022. (*See id.*)  Plaintiffs then submitted rebuttal statements challenging the basis for the payment suspensions. (*See* Rebuttals, ECF No. 2-9.)  CMS considered the rebuttal statements (*see* Roe Decl. at ¶7, ECF No. 24-2, PageID.379), but as the date of this order, the suspension remains in place, and the Secretary's investigation appears to remain ongoing.  The Secretary has not yet issued an Overpayment Determination and/or made any determination as to whether Plaintiffs were actually overpaid.

**D**

Plaintiffs commenced this action on October 23, 2022.  They complain that the Secretary's actions are subjecting them to financial ruin.  More specifically, Plaintiffs assert that the payment suspension has resulted in the loss of 92% of their regular monthly revenue. (*See* First Am Compl. at ¶¶ 80-82, ECF No. 29, PageID.482.)

In their First Amended Complaint, Plaintiffs bring three sets of claims.  First, Plaintiffs bring the following claims challenging the suspension of their reimbursement payments (the "Suspension Claims"):

- The suspension violated the Due Process Clause of the Fifth Amendment (Count 2);

- The suspension violated the Medicare Act (Count 4); and

- The suspension constituted an ultra vires act (Count 6).

In their requests for relief on the Suspension Claims, Plaintiffs ask the Court to, among other things, (1) issue "a writ of mandamus that requires the [Secretary] to lift or terminate the reimbursement payment suspensions, release all reimbursement payments held per the suspensions, issue an initial determination of an overpayment, and allow the Plaintiffs' to administratively appeal the initial determination two stages before any recoupment happens" and (2) issue an injunction "that requires the [Secretary] to temporarily rescind Medicare

reimbursement payment suspensions until the [Secretary] complies with the U.S. Constitution," and the Medicare Act.[1] (*Id.* at ¶¶ 110-111, 124-125, 146-147, PageID.489, 491-492, 495.)

Second, Plaintiffs bring three claims in which they allege that the Electronic Payment Reversals constituted an unlawful "recoupment" of their funds (the "Recoupment Claims"). (*See id.* at Counts 1, 3, and 5, PageID.486, 489, 492.) Plaintiffs assert that the recoupment was impermissible because the Secretary recouped their funds without first issuing an Overpayment Determination. (*See id.*) In the Recoupment Claims, Plaintiffs say that:

- The recoupment violated the Due Process Clause of the Fifth Amendment (Count 1);

- The recoupment violated the Medicare Act (Count 3); and

- The recoupment constituted an ultra vires act (Count 5).

In their requests for relief on the Recoupment Claims, Plaintiffs ask the Court to (1) issue "a writ of mandamus that requires the [Secretary] to return the recouped money, issue an initial determination of an overpayment, and allow the Plaintiffs' to administratively appeal the initial determination two stages before any recoupment

---

[1] As explained more fully below, at the hearing on the Secretary's motion to dismiss, Plaintiffs clarified that the sole relief that Plaintiffs seek through the Suspension Claims is a ruling that (1) they were entitled to a hearing before the Secretary suspended their reimbursement payments and (2) the Secretary must afford them a hearing as a condition of continuing the suspension.

happens," (2) issue "a writ of mandamus that requires the [Secretary to] return the [funds taken by the Electronic Payment Reversals], and to comply with 31 C.F.R. Part 210 prior to reversing any [electronic] payments," and (3) issue an injunction that "that requires the [Secretary] to temporarily rescind the recoupment of Medicare reimbursement payments until the [Secretary] complies with the U.S. Constitution," the Medicare Act, and 31 C.F.R. Part 201 (*See id.* at ¶¶ 102-103, 116-117, 136-137 PageID.487, 490, 493.)

Finally, Plaintiffs challenge Electronic Payment Reversals on two additional bases (the "Electronic Reversal Claims").  In the Electronic Reversal Claims, the Plaintiffs say that:

- The Electronic Payment Reversals amounted to ultra vires conduct (Count 5); and

- The Electronic Payment Reversals violated 31 C.F.R. Part 210 (Count 7).

In their requests for relief on the Electronic Reversal Claims, Plaintiffs ask the Court to (1) issue "a writ of mandamus that requires the [Secretary] return the [funds taken by the Electronic Payment Reversals], and to comply with 31 C.F.R. Part 210 prior to reversing any [electronic] payments," (2) issue an injunction "that requires the [Secretary] to return the [funds taken by the Electronic Payment Reversals] and comply with 31 C.F.R. Part 210," and (3) award Plaintiffs "any loss sustained as a

result of [the Secretary's] failure to comply with the applicable regulations." (*Id.* at ¶¶ 154-156, PageID.496-497.)

## E

Two motions are now pending before the Court.  In the first pending motion, the Secretary has moved to dismiss Plaintiffs' First Amended Complaint in its entirety. (*See* Secretary's Mot., ECF No. 31.)  In that motion, the Secretary argues that the Court lacks subject-matter jurisdiction over all of Plaintiffs' claims. (*See id.*, PageID.525-526.)  In the alternative, the Secretary contends that "even if the Court were to conclude that it has jurisdiction over Plaintiffs' claims, the Amended Complaint fails to state a claim on which relief could be granted." (*Id.*, PageID.526.)

Plaintiffs filed their opposition to the Secretary's motion on December 7, 2022. (*See* Plas.' Resp. to Mot. to Dismiss, ECF No. 35.)   In that opposition, Plaintiffs assert that the Court has subject-matter jurisdiction over all of the Recoupment Claims and the Electronic Reversal Claims.  In contrast, Plaintiffs do not contend that the Court has subject-matter jurisdiction over all of the Suspension Claims.  Instead, Plaintiffs argue only that the Court has jurisdiction over their claim in Count 2 that the suspension of their Medicare payments violates the Due Process Clause (the "Due Process Suspension Claim"). (*See id.*, PageID.646.)  Because Plaintiffs do not attempt to show that the Court has subject-matter jurisdiction over the other Suspension Claims – *i.e.*, their claim that the suspension violates the

Medicare Act (Count 4) or that the suspension constitutes an ultra vires act (Count 6) – the Court will dismiss those claims without prejudice. *See*, *e.g.*, *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010) (explaining that "the party invoking federal jurisdiction" bears "the burden of satisfying the requirements of federal jurisdiction").

In the second pending motion, Plaintiffs have moved for partial summary judgment. (*See* Plas.' Mot., ECF No. 32.)  Plaintiffs seek summary judgment on the Electronic Reversal Claims. (*See id.*)

## II

The Court begins with the portion of the Secretary's motion in which he argues that the Court lacks subject-matter jurisdiction over Plaintiffs' claims.  He moves to dismiss those claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Rule 12(b)(1) motions fall into two general categories: facial attacks and factual attacks. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack "is a challenge to the sufficiency of the pleading itself." *Id.*  The court accepts a complaint's allegations as true and determines whether they establish federal jurisdiction. *See id.*  In contrast, when a motion raises a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citation omitted).   Here, the Secretary presents a facial attack

challenging the sufficiency of the pleadings in the First Amended Complaint. (*See* Secretary's Mot., ECF No. 31, PageID.526-527.)

For the reasons explained below, the Court concludes that it does have jurisdiction over the Due Process Suspension Claim and the portion of the Recoupment Claims seeking to compel the Secretary to issue an Overpayment Determination.  However, the Court finds that it lacks subject-matter jurisdiction over the remainder of the Recoupment Claims and the Electronic Reversal Claims.

## A

The Secretary contends that the Court lacks subject-matter jurisdiction over Plaintiffs' claims under the doctrine of sovereign immunity and under what is known as the "jurisdictional bar" in the Medicare Act.  The Court begins its analysis with a brief discussion of these legal principles.

## 1

The United States is protected by sovereign immunity and cannot generally be sued without its consent. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Only Congress may waive sovereign immunity by consenting to suit against the federal government, and "waivers of federal sovereign immunity must be unequivocally expressed in the statutory text." *United States v. Idaho ex rel. Dir., Idaho Dept. of Water Res.*, 508 U.S. 1, 6 (1993).  Moreover, "where Congress has consented to suit against the government, it may define the terms and conditions

under which it is willing to allow the United States to be sued." *Southern Rehabilitation Group, P.L.L.C. v. Sec. of Health and Human Services*, 732 F.3d 670, 676-77 (6th Cir. 2013). For purposes of this action, the Secretary may invoke the United States' sovereign immunity because Plaintiffs have sued him in his official capacity. *See*, *e.g.*, *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013) (explaining that "[w]ithout a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against […] officials in their official capacities").

## 2

The Medicare Act contains "a limited waiver of [the United States'] sovereign immunity." *Southern Rehab. Grp.,* 732 F.3d at 678. The waiver is found in 42 U.S.C. § 1395ff(b)(1)(A), which provides, in relevant part, that a party may seek judicial review of a final decision of the Secretary under the Medicare Act "as is provided in section 405(g) of [the Social Security Act]." 42 U.S.C. § 1395ff(b)(1)(A). Section 405(g), in turn, provides that, "[a]ny individual, after any final decision … may obtain a review of such decision by a civil action commenced" within sixty days. 42 U.S.C. § 405(g).

Section 405(g) provides the sole route into federal court for most claims by Medicare suppliers against the Secretary. That is because another section of the Medicare Act, 42 U.S.C. § 1395ii, "expressly adopts the Social Security Act's

jurisdictional bar to judicial review found at 42 U.S.C. § 405(h)." *Southern Rehab. Grp.,* 732 F.3d at 678.  The jurisdictional bar in Section 405(h) first provides that "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as provided herein." 42 U.S.C. § 405(h).  It then states that "[n]o claim against the United States, the Secretary or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."  As the Sixth Circuit has explained, the jurisdictional bar in Section 405(h) "purports to make" Section 405(g) the "exclusive" avenue for judicial review of most claims arising under the Medicare Act. *Cathedral Rock of N. College Hill, Inc. v. Shalala*, 223 F.3d 354, 359 (6th Cir. 2000).

### 3

The Secretary argues that the doctrine of sovereign immunity and Section 405(h) work in tandem to bar Plaintiffs' claims.  His argument proceeds as follows. The Secretary first says that the claims are barred by sovereign immunity because those claims do not qualify for review under the limited immunity waiver in Section 405(g).  The Secretary then insists that Section 405(h) precludes Plaintiffs from seeking review of their claims under any statute other than Section 405(g).  Simply put, the Secretary says that sovereign immunity and Section 405(h), taken together,

preclude review of Plaintiffs' claims.  The Court will evaluate these arguments below with respect to the three sets of claims brought by Plaintiffs.

## B

The Court first turns to the Due Process Suspension Claim.  As described above, in that claim, Plaintiffs allege that the suspension of their Medicare reimbursement payments violated the Due Process Clause.  For the reasons explained below, the Court concludes that this claim satisfies the requirements for review under Section 405(g).  Thus, neither sovereign immunity nor Section 405(h) prevent this Court from adjudicating that claim.

## 1

Section 405(g) "has been interpreted to contain *two* prerequisites to judicial review." *Southern Rehab. Grp.,* 732 F.3d at 678 (emphasis in original).  The first is a "'nonwaivable and nonexcusable requirement that [a party] present a claim to the [Secretary] before raising it in court.'" *Id.* (quoting *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 15 (2000)).  The second is "a waivable requirement of exhaustion of administrative remedies." *Id.*  A plaintiff must "ordinarily" exhaust these remedies because, as noted above, Section 405(g) only authorizes the review of "final decisions," and (with exceptions not relevant here) the Secretary's decisions generally do not become final until a claimant has completed all four steps of the administrative review process described above. *See Family Rehab., Inc. v. Azar*, 886

F.3d 496, 500-01 (5th Cir. 2018).  Simply put, in order to establish that a district court has subject-matter jurisdiction over a claim under Section 405(g), a plaintiff must show (1) that it presented the claim to the Secretary and (2) either that it exhausted its administrative remedies or that exhaustion is waived.

2

Plaintiffs have satisfied both prerequisites to judicial review under Section 405(g).  First, they presented the Due Process Suspension Claim to the Secretary in their rebuttal statements to the notices of suspension issued by the Secretary. *See Am. Med. Hospice Care, LLC v. Azar*, 2020 WL 9814144, at *5 (W.D. Tex. Dec. 9, 2020) (holding that Medicare supplier presented claim to Secretary by submitting rebuttal statement in response to notice that Secretary had suspended supplier's payments).  Indeed, the Secretary does not contend that Plaintiffs failed to present the Due Process Suspension Claim.﹗

Second, Plaintiffs have shown that the exhaustion of administrative remedies requirement should be waived under what is known as the "'entirely collateral' exception" to the usual exhaustion requirement.  *Cathedral Rock*, 223 F.3d at 364. The entirely collateral exception provides that "Section 405(g)'s exhaustion requirement may be waived where a plaintiff's claim is 'entirely collateral' to his substantive claim of entitlement and he makes a colorable claim that he could not obtain full relief through retroactive benefits awarded in a post-deprivation hearing."

*Oakland Med. Grp., P.C. v. Sec'y of Health & Hum. Servs., Health Care Fin. Admin.*, 298 F.3d 507, 510 (6th Cir. 2002). The Due Process Suspension Claim satisfies both elements of the "entirely collateral" exception.

The claim satisfies the first element because it is collateral to Plaintiffs' substantive claims for payment. "For a claim to be collateral, it must not require the court to 'immerse itself' in the substance of the underlying Medicare claim or demand a 'factual determination' as to the application of the Medicare Act." *Family Rehab.*, 886 F.3d at 501 (quoting *Affiliated Pro'f Home Health Care Agency v. Shalala*, 164 F.3d 282, 285-86 (5th Cir. 1999)). Likewise, a claim is not collateral if it seeks the "substantive" or "permanent" relief that the plaintiff ultimately wishes to receive from the Secretary. *Id.* In short, a claim "is not collateral" if, in order to resolve it, a court would have to "examine the merits of the underlying dispute, delve into the statute and regulations, or make independent judgments as to plaintiffs' eligibility under a statute…." *Id.* at 503. "Instead," to be collateral, "the claim must seek some form of relief that would be unavailable through the administrative process." *Id.* at 502.

Judged against this standard, the Due Process Suspension Claim is "plainly collateral." *Id.* at 503. To resolve that claim, the Court would neither have to immerse itself in the substance of any Medicare regulations nor make any factual determinations about any issues arising under the Medicare Act. Moreover, the

claim does not seek any substantive or permanent relief under the Medicare Act. Instead, as Plaintiffs' counsel clarified at the hearing before the Court on August 9, 2023, the sole relief that Plaintiffs seek through the Due Process Suspension Claim is a ruling that (1) they were entitled to a hearing before the Secretary suspended their reimbursement payments and (2) the Secretary must afford them a hearing as a condition of continuing the suspension. This request for procedural relief is entirely collateral to Plaintiffs' substantive claim for the permanent reinstatement of their reimbursement payments. *See Cathedral Rock*, 223 F.3d at 364 (concluding that a claim seeking "a pre-termination hearing under the Due Process Clause involves [a plaintiff's] procedural constitutional rights and [was] 'entirely collateral' from its substantive challenge to the Secretary's termination decision."); *Family Rehab.*, 886 F.3d at 503-04 (holding that claim seeking pre-recoupment hearing under the Due Process Clause was entirely collateral to substantive challenge to recoupment). The first element of the "entirely collateral" exception is therefore satisfied.

The second element of the exception is likewise met because Plaintiffs have raised a colorable claim that they could not obtain full relief through a post-deprivation hearing. Plaintiffs say that as a result of the Secretary's suspension, they have lost 92% of their monthly revenues and that they face a substantial likelihood of going out of business if that revenue stream is suspended for a meaningful period of time. (*See* First Am. Compl. at ¶¶ 80-82, ECF No. 29, PageID.482.) And if

Plaintiffs were to go out of business while the suspension is pending, prevailing at a later administrative hearing would provide them no benefit. These allegations are sufficient to satisfy the "colorable claim" element of the "entirely collateral" exception. *See Family Rehab.*, 886 F.3d at 504 (finding that plaintiff had raised a colorable claim that full relief would not be available at a post-deprivation hearing where plaintiff showed that it received roughly 90% of its revenue from Medicare payments and that it would likely go out of business before it could obtain relief at a post-deprivation hearing).

In sum, Plaintiffs have shown that they presented the Due Process Suspension Claim to the Secretary and that the claim satisfies both elements of the "entirely collateral" exception to the exhaustion of administrative remedies requirement. Thus, Plaintiffs have satisfied the prerequisites for judicial review under Section 405(g) and have established that the claim is not barred by sovereign immunity or Section 405(h). The Court may therefore review the Due Process Suspension Claim on the merits.

## C

The Court next turns to whether it may review the Recoupment Claims. As explained above, Plaintiffs allege in those claims that the Electronic Payment Reversals amounted to a "recoupment," and Plaintiffs contend that that recoupment violated the Due Process Clause, the Medicare Act, and constituted an ultra vires

act. Plaintiffs seek to compel the Secretary (1) to issue an Overpayment Determination (which will allow them to administratively appeal the recoupment) and (2) to return the recouped funds.

For the reasons explained below, the Court concludes that sovereign immunity and Section 405(h) do not bar review of the portion of the Recoupment Claims in which Plaintiffs seek to compel the Secretary to issue an Overpayment Determination.  However, the Court concludes that it may not review the portion of the Recoupment Claims seeking to compel the Secretary to return to recouped funds, and it will dismiss that portion of the Recoupment Claims for lack of jurisdiction.

**1**

Plaintiffs' arguments as to why sovereign immunity and Section 405(h) do not bar the Recoupment Claims differ from their arguments (discussed above) as to why that doctrine and statute do not preclude review of the Due Process Suspension Claim.  While Plaintiffs argued that the Court could review the Due Process Suspension Claim under Section 405(g), they do not argue that the Court may review the Recoupment Claims under that statute.  Instead, Plaintiffs argue that the Court may review the Recoupment Claims and grant Plaintiffs relief under the general mandamus statute, 28 U.S.C. § 1361 (the "Mandamus Statute"). (*See* Plas.' Resp. to Mot. to Dismiss, ECF No. 35, PageID.635-636.)

They invoke the Mandamus Statute as a way around both sovereign immunity and the litigation bar in Section 405(h).  The Court agrees that the Mandamus Statute overcomes those obstacles to review with respect to one – and only one – component of the Recoupment Claims.

<strong>2</strong>

In some cases, a Medicare supplier may rely upon the Mandamus Statute to overcome the Secretary's invocation of sovereign immunity.  For instance, notwithstanding that immunity, a supplier may bring a claim under the Mandamus Statute seeking to compel the Secretary to perform a non-discretionary duty.  Sovereign immunity does not bar such a claim because a "recalcitrant officer[] enjoy[s] no sovereign immunity from orders commanding [him] to perform [his] non-discretionary duties." *Universal Life Church Monestary Storehouse v. Nabors*, 35 F.4th 1021, 1041 (6th Cir. 2022).  As the United States Circuit Court for the District of Columbia has explained, no waiver of sovereign immunity "is needed" where "a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity." *Wash. Legal Found. v. U.S. Sentencing Commission*, 89 F.3d 897, 901 (D.C. Cir. 1996). *See also Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949) ("There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign.... [W]here the officer's powers are limited by statute, his

24

actions beyond those limitations are considered individual and not sovereign actions"); *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (explaining that under the Supreme Court's decisions in *Larson* and *Dugan v. Rank*, 372 U.S. 609 (1963), "sovereign immunity does not apply as a bar to suits alleging that an officer's actions were unconstitutional or beyond statutory authority").

Likewise, the litigation bar in Section 405(h) does not preclude a supplier's claim for relief under the Mandamus Statute. That is because the bar applies only to actions brought under "under *section 1331 or 1346 of Title 28* to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h) (emphasis added).[2]

For these reasons, if and to the extent that the Recoupment Claims assert viable requests for mandamus relief, then neither sovereign immunity nor Section

---

[2] In *BP Care, Inc. v. Thompson*, 398 F.3d 503, 515 (6th Cir. 2005), the Sixth Circuit said that it had not yet squarely "decid[ed] whether § 405(h) bars mandamus jurisdiction under 28 U.S.C. § 1361, in the same way that it bars jurisdiction under §§ 1331 and 1346." However, there is a "nearly unanimous consensus" among the other circuits that Section 405(h) does not bar jurisdiction over a proper claim for mandamus under the Mandamus Statute. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 765 (5th Cir. 2011) (collecting cases). In *BP Care*, the Sixth Circuit also said: "The Supreme Court has, however, muted the importance of the question [of whether Section 405(h) applies to a claim for mandamus under the Mandamus Statute] by holding in *[Hecker v. Ringer*, 466 U.S. 602 (1984)]* that a litigant who has a remedy available under § 405 has not met the exhaustion of remedies requirement for mandamus. Thus, the *Ringer* decision has an effect similar to that of placing mandamus within § 405(h)'s jurisdictional bar." *Id.* (citations omitted). That "effect" does not preclude the Court from exercising mandamus jurisdiction over the Recoupment Claims because, as the Court explains above, Plaintiffs have not failed to exhaust their available administrative remedies with respect the Recoupment Claims.

405(h) precludes the Court from reviewing the claims. *See Wash. Legal Found.*, 89 F.3d at 902 (explaining that whether a district court has mandamus jurisdiction may "merge with the question" as to whether the plaintiff has sufficiently pleaded the essential elements of mandamus relief).

### 3

To state a viable claim for mandamus relief, a plaintiff must allege that "(1) [it] has exhausted all available administrative appeals and (2) the [defendant] owes [it] a clear nondiscretionary duty that [the defendant] has failed to perform." *Your Home Visiting Nurse Servs., Inc. v. Sec'y of Health & Hum. Servs.*, 132 F.3d 1135, 1141 (6th Cir. 1997) (internal quotation marks omitted), *aff'd sub nom. Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, (1999).[3]

The portion of the Recoupment Claims in which Plaintiffs seek to compel the Secretary to issue an Overpayment Determination satisfies both elements of this test. First, Plaintiffs have not failed to exhaust any available administrative remedies with respect to that portion of the claims. As explained above, the Plaintiffs do not have any remedies available to challenge the alleged recoupment unless and until the

---

[3] Where a plaintiff's claim against the Secretary satisfies the two elements identified in *Your Home Visiting Nurse Servs., Inc.*, above, a district court may exercise mandamus jurisdiction over the claim. *See New Vision Home Health Care, Inc. v. Anthem, Inc.*, 752 F. App'x 228, 234 (6th Cir. 2018) (acknowledging that district court could have exercised mandamus jurisdiction over claim against designee of the Secretary if plaintiff had shown that it exhausted available remedies and that it was seeking to compel the designee to perform a clear non-discretionary duty).

Secretary issues an Overpayment Determination; indeed, that determination triggers Plaintiffs' right to begin the administrative appeals process. (*See above* at Section (I)(A)(1)-(2).)

Second, Plaintiffs have sufficiently alleged that the Secretary has failed to perform his non-discretionary duty to issue an Overpayment Determination. That duty is non-discretionary because, as explained above (*see* Section (I)(A)(1)-(2)), any recoupment by the Secretary must be accompanied by an Overpayment Determination. *See*, *e.g.*, *VCP Home Health Care Agency*, 2011 WL 13290666, at *5 (explaining that because "Section 405.372(c) [] makes the [issuing of an] overpayment determination a nondiscretionary duty […], the ministerial act of determining whether and in what amount an overpayment exists is not one committed to agency discretion; the Secretary must make a timely determination one way or the other"). And as further described above, it is that determination that makes the administrative review process available. Here, Plaintiffs sufficiently allege that the Secretary owes them a non-discretionary duty to issue an Overpayment Determination and to thereby make the administrative review process available to them. Because the portion of the Recoupment Claims seeking an Overpayment Determination satisfies both essential elements for mandamus relief, the Plaintiffs may rely upon the Mandamus Statute to overcome the Secretary's invocation of sovereign immunity and Section 405(h). *See id.* at ** 5-6 (holding that

court had mandamus jurisdiction over claim seeking to compel Secretary to issue an Overpayment Determination and noting that "[m]andamus exists to address precisely this kind of exceptional circumstance" where "without an overpayment determination, [a Medicare supplier] has no claim to present to the Secretary for administrative review").

In contrast, the portion of the Recoupment Claims in which Plaintiffs seek to compel the Secretary to return the recouped funds does not satisfy the essential elements of mandamus relief, and thus Plaintiffs may not rely upon the Mandamus Statute to overcome sovereign immunity and Section 405(h) with respect to that component of the claims.  That aspect of the Recoupment Claims does not seek to compel the Secretary to perform a clear *outstanding* duty that he has failed to perform.  Instead, that component of the claims seeks to remedy the *completed* wrongful takings of Plaintiffs funds.  That remedy – "the undoing of injurious acts and the restoration of the status quo" – is in the nature of "[a]n injunction," not a writ of mandamus. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 766 (5th Cir. 2011).  And mandamus relief is not available for such a claim. *See Family Rehab.*, 886 F.3d at 505-06 (declining to exercise mandamus jurisdiction over a claim that was injunctive in nature); *True Health Diagnostics*, 392 F.Supp.3d at 665 (finding that plaintiff's request for a writ of *mandamus* ordering defendant to "immediately release the suspended funds being held in escrow" was essentially "an

order to compel CMS to remedy the allegedly injurious act of suspending and withholding its Medicare payments," and therefore "constitutes injunctive relief, and thus no mandamus jurisdiction exists for those claims"); *Fidelis Diagnostics, Inc. v. SafeGuard Services, LLC*, 2011 WL 5975787, at *9 (E.D. Tex. Nov. 4, 2011) (finding that plaintiff's request for a writ of mandamus ordering defendant to recalculate its initial determination of overpayment to be an inappropriate request for mandamus because the request for relief "ask[s] the Court" to, among other things, "require Defendants to undo injurious acts, rather than compel the Defendants 'to affirmatively perform a presently existing duty under the law'").[4] Thus, contrary to Plaintiffs' contention, the Mandamus Statute does not authorize the Court to compel the Secretary to return the recouped funds.[5]

---

[4] In a footnote to their supplemental brief, Plaintiffs suggest that the distinction between a writ of mandamus and an injunction "is of little, if any, significance." (Plas.' Supp. Br. at n.2, ECF No. 47, PageID.874, quoting *Cohn v. Brown*, 161 F. App'x 450, 452 n.1 (6th Cir. 2005).) However, while that distinction may have little significance in other contexts, it matters where, as with the Recoupment Claims, the sole basis for subject-matter jurisdiction over a claim is the Mandamus Statute. Indeed, as the authorities cited above in text demonstrate, in this context, the distinction may be dispositive: where a request for relief is in the nature of an injunction that cannot properly be characterized as a writ of mandamus, the Mandamus Statute does not provide a basis for subject-matter jurisdiction.

[5] As Plaintiffs accurately note, during an emergency hearing on Plaintiffs' motion for a temporary restraining order, the Court suggested that it could properly issue a writ of mandamus compelling the Secretary to return funds that had been wrongfully recouped. (*See* 8/30/22 Hearing Tr. at 41, ECF No. 28, PageID.436.) But prior to that hearing – which the Court conducted virtually from a hotel in Louisville, Kentucky while attending the Sixth Circuit Judicial Conference – the Court had not

**D**

Finally, the Court turns to the Payment Reversal Claims. In those claims, Plaintiffs allege that the Electronic Payment Reversals violated 31 C.F.R. Part 210 and amounted to ultra vires conduct. As their request for relief in these claims, Plaintiffs ask the Court to compel the Secretary to return the funds taken by the Electronic Payment Reversals. (*See* First Am. Compl. at ¶¶ 154-156, ECF No. 29, PageID.496-497.) Plaintiffs again contend that the Mandamus Statute authorizes the Court to grant that relief. (*See* Plas.' Resp. to Mot. to Dismiss, ECF No. 35, PageID.644-645.) The Court disagrees.

The Mandamus Statute does not authorize the Court to grant the relief requested in the Payment Reversal Claims for the same reasons (explained immediately above) that it did not empower the Court to compel the Secretary to return the recouped funds. The Payment Reversal Claims seek relief – an order directing the undoing of allegedly-wrongful payment reversals – that it is in the nature of an injunction, not in the nature of a writ of mandamus. Simply put, in the Payment Reversal Claims, Plaintiffs are asking the Court to right a past wrong, not to compel the Secretary to comply with a pre-existing legal duty that he is obligated

---

had a full opportunity to research the scope of mandamus relief. Since that hearing, the Court has conducted additional research and discovered the authorities cited above. Those authorities caused the Court to change the view it expressed during the emergency hearing.

to perform. Plaintiffs therefore do not have a viable claim for mandamus that would enable Plaintiffs to overcome the Secretary's invocation of sovereign immunity. The Court will therefore dismiss the Payment Reversal Claims without prejudice due to lack of subject-matter jurisdiction.

Finally, the Court wishes to address two points made by Plaintiffs in their briefing regarding the Payment Reversal Claims. First, Plaintiffs argued at one point that the Court has subject-matter jurisdiction over the Payment Reversal Claims because they "do not arise under the Medicare Act" and, thus, are not subject to the litigation bar in Section 405(h). (Plas.' Resp. to Mot. to Dismiss, ECF No. 35, PageID.640.) But even if that is true, it would not be enough to establish that the Court has jurisdiction over the claims. As explained above, the Secretary invokes both the litigation bar in Section 405(h) and the doctrine of sovereign immunity, and Plaintiffs' argument that the litigation bar in Section 405(h) does not apply, even if correct, would not overcome the Secretary's separate and independent reliance on sovereign immunity.

Second, Plaintiffs argue that the Court has subject-matter jurisdiction over the Payment Reversal Claims under Section 702 of the Administrative Procedures Act, 5 U.S.C. § 702 (the "APA"). (*See* Plas.' Supp. Br., ECF No. 47, PageID.878-880.) But this argument comes too late. Plaintiffs did not cite the APA as one of the bases of subject-matter jurisdiction in their First Amended Complaint and did not mention

the APA in their response to the Secretary's motion to dismiss.  Instead, Plaintiffs

first mentioned the APA in a supplemental brief that they were granted leave to file

after the second hearing that the Court held on the Secretary's motion to dismiss.

(*See id.*)  The Court did not authorize Plaintiffs to raise new grounds for jurisdiction

in that supplemental brief, and it would be improper to permit Plaintiffs to do so

because that brief was filed after the Secretary filed his final brief on the

jurisdictional issues.  Under these circumstances, the Court declines to consider

Plaintiffs' jurisdictional arguments under the APA. *See Valent v. Commissioner*, 918

F.3d 516, 524 (6th Cir. 2019) (declining to consider new argument raised in

supplemental brief that had been requested by the court on other issues).

## E

In sum, the Court concludes that the following portions of Plaintiffs' claims

are not barred by sovereign immunity and/or the litigation bar in Section 405(h): (1)

the Due Process Suspension Claim and (2) the component of the Recoupment Claims

in which Plaintiffs seek to compel the Secretary to issue an Overpayment

Determination.   The Court lacks subject-matter jurisdiction over the rest of

Plaintiffs' claims, and it **DISMISSES** those claims without prejudice for lack of

jurisdiction.

### III

The Court now turns to the merits of the Due Process Suspension Claim and the portion of the Recoupment Claims seeking to compel the Secretary to issue an Overpayment Determination. For the reasons explained below, the Court concludes that the Due Process Suspension Claim fails on the merits, and it will dismiss that claim. But Plaintiffs have stated a plausible claim with respect to their request in the Recoupment Claims for a writ of mandamus directing the Secretary to issue an Overpayment Determination.

### A

The Secretary moves to dismiss Plaintiffs' remaining claims on the merits under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations

as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## B

The Court first addresses the Secretary's attack on the merits of the Due Process Suspension Claim. The Court agrees with the Secretary that that claim is not viable.

## 1

When faced with a procedural due process claim, a district court must undertake "a familiar two-part inquiry." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). The "first question asked … is whether a life, liberty, or property interest within the meaning of the Due Process is implicated in the case." *Walker v. Hughes*, 558 F.2d 1247, 1250 (6th Cir. 1977). "If such an interest is present, then the second question for resolution is what process must be granted before the person can be deprived of the protected interest." *Id.* Here, the Due Process Suspension

Claim fails at the first question because Plaintiffs have not plausibly alleged that the suspension of their reimbursement payments impacted an interest protected by the Due Process Clause of the Fifth Amendment.

**2**

Plaintiffs say that the suspension infringes their protected property interests. The "property interests" that the Due Process Clause protects "are not created by the Constitution." *Verba v. Ohio Cas. Ins. Co.,* 851 F.2d 811, 814 (6th Cir. 1988) (quoting *Parratt v. Taylor*, 451 U.S. 527, 529 n.1 (1981)). Instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that supports claims of entitlement to those benefits." *Id.* Federal statutes and regulations that confer benefits may also create property interests that are protected by the Due Process Clause. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (acknowledging "statutorily created" property interest in federal benefits payments); *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir. 1991) (explaining that an "independent source" that creates a protected property interest "may be a statute, policy, practice, regulation, or guideline").

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. Of Regents of*

*State. Colleges v. Roth*, 408 U.S. 564, 577 (1972). And a plaintiff who claims that he was deprived of property without due process bears "the burden of demonstrating that he possessed a protected property [] interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). In order to carry that burden, a plaintiff must "identify the source of [his claimed] property interest." *Ferkel v. Bd. of Educ. of City of Chicago*, 45 F.Supp.3d 824, 833 (N.D. Ill. 2014). Indeed, "[i]t is imperative that the claimant alleging a property interest precisely identify the … source of that interest." *Felton v. Bd. of Comm'rs of Greene Cnty.*, 796 F. Supp. 371, 374 (S.D. Ind. 1991).[6] A claimant's failure to do so requires dismissal of his claim. *See, e.g., Ruffin v. Nicely*, 183 F. App'x 505, 510 (6th Cir. 2006) (affirming dismissal of procedural due process claim on ground that the plaintiff "failed to identify any property interests arising from independent sources of law for the Federal Constitution to protect").

### 3

Plaintiffs allege that the suspension of their reimbursement payments deprived them of two specific property interests: (1) their interest in continuing to be paid on a going-forward basis for services rendered in the future and (2) their interest in

---

[6] *See also Campanella v. Cnty. of Monroe*, 853 F.Supp.2d 364, 382 (W.D.N.Y. 2012) (dismissing procedural due process claim because, among other reasons, plaintiff failed to identify the "source" of his claimed property interest); *O'Donnell v. Vill. of Downers Grove*, 656 F. Supp. 562, 566 (N.D. Ill. 1987) (same).

payment for services that they rendered before the suspension went into effect. But they have failed to establish a protectible property interest in either stream of payments.

a

The Court begins with Plaintiffs' claimed interest in payments for services to be rendered in the future on a going-forward basis. Plaintiffs' briefing does not identify any rule, regulation, law, or other source of authority that recognizes a protectable property interest in payments for work that has not yet been performed. And during the hearing before the Court, Plaintiffs' counsel candidly acknowledged that he was not aware of any such authority.

Moreover, the Sixth Circuit's decision in *Parrino v. Price*, 869 F.3d 392, 397-98 (6th Cir. 2017), suggests that Medicare suppliers like Plaintiffs do not have a protectable property interest in payments for services not yet rendered. In *Parrino*, the court held that a Medicare supplier did not have a protected property interest in continuing to participate in Medicare. The court acknowledged that excluding the supplier from Medicare could potentially result in a meaningful "financial loss" to the supplier, but the court determined that the loss did "not advance to the level of a protected property right because no clear promises [of continued participation] ha[d] been made by the government." *Id.* at 398 (quoting *Koerpel v. Heckler*, 797 F.2d 858, 864 (10th Cir. 1986)). Plaintiffs' claim here that they have a protectable

property interest in payment for services they have not yet provided seems to closely track the claim of the plaintiff in *Parrino* that the plaintiff had a right to continue to participate in – and be paid for work on a going-forward basis by – the Medicare system.  It would thus be inconsistent with *Parrino* to conclude that Plaintiffs have a protectable property interest in payments for work not yet performed.  Under all of these circumstances, the Court concludes that Plaintiffs have not plausibly alleged that they have a protectable property interest in a stream of Medicare payments for work that they will perform in the future.

**b**

Whether Plaintiffs have a protectable property interest in payment for services that they performed before the suspension went into effect is a much closer question. As Plaintiffs rightly note, several district courts have concluded that Medicare and/or Medicaid suppliers do have a protectible property interest in payment for services already rendered. (*See* Plas.' Resp. to Mot. to Dismiss, ECF No. 35, PageID.649, citing *Morrison v. Sebelius*, 2013 WL 3288167, at * 4 (S.D. Ohio June 28, 2013), Med-*Cert Home Care, LLC v. Azar*, 365 F.Supp.3d 742, 751 (N.D. Tex. 2019), and *Fam. Rehab., Inc. v. Azar*, 2018 WL 3155911 (N.D. Tex. June 28, 2018).)  However, these cases "cite no binding authority," and, much more importantly, they "simply find that a property interest exists with little analysis." *Acute Care Ambulance Serv., L.L.C. v. Azar*, 2020 WL 7640206, at *9 (S.D. Tex. Dec. 3, 2020).  Moreover,

Plaintiffs do not go beyond these cases to offer their own analysis as to how they have a protectable property interest in payments for services rendered.  Likewise, they do not cite a rule, regulation, or law that could have created such an interest.  Plaintiffs simply have not carried their burden of identifying the source of their claimed property interest in payment for services rendered.  Their failure to do so is fatal to their claim. *See Warren*, 411 F.3d at 707 (explaining that it is plaintiff's "burden [to] demonstrate[e] that he possessed a protected property [] interest").

Furthermore, even if it could be assumed that Plaintiffs have *some* property interest in payment for services rendered, it is hard to see how that property interest would include protection against the payment suspension imposed by the Secretary.  Once again, property interests arise when, among other things, sources of law create legitimate expectations. *See*, *e.g.*, *Verba*, 851 F.2d at 814.  And here, the relevant sources of law expressly notified Plaintiffs that any and all payments owing to them *could* be suspended immediately and without notice when the Secretary received what he considered to be a credible allegation of fraud. *See* 42 U.S.C. § 1395y(o)(1); 42 C.F.R. §§ 405.371(a)(2), 405.372(a)(3) – (a)(4).  Because Plaintiffs had such notice, it seems difficult to conclude that they could have had a legitimate expectation that they would be paid as usual for services rendered even if the Secretary received a credible allegation of fraud.  Stated another way, even if Plaintiffs had some property interest in payment for serviced rendered, the governing

regulations effectively "carved out of that property interest the right to immediate payment while an investigation into credible allegations of fraud are pending." *Border Area Mental Health Serv, Inc. v. Squier*, 2013 WL 12140453, at ** 4-5 (D. New Mex. July 25, 2013).[7]  Perhaps that is why "[a]ll Circuits that have addressed the issue have determined that a temporary suspension of Medicare or Medicaid payments does not implicate due process…." *ABA, Inc. v. Dist. Of Columbia*, 40 F.Supp.3d 153, 167 (D.D.C. 2014).[8]

---

[7] *See also Maynard v. Bonta*, 2003 U.S. Dist. LEXIS 16201, at ** 53-59 (C.D. Cal. Aug. 29, 2003) (holding that where governing regulations authorize a temporary suspension of benefit payments pending an investigation into a credible allegation of fraud, such a temporary suspension does not infringe a property interest protected by Due Process Clause); *Alexandre v. Ill. Dept. of Healthcare & Fam. Serv.*, 2021 WL 4206792, at ** 7-9 (N.D. Ill Sept. 15, 2021) (applying same rule).

[8] The line of cases cited above is not inconsistent with the Sixth Circuit's decision in *A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613, 619 (6th Cir. 2019).  In *A1 Diabetes*, the Sixth Circuit assumed, *without* deciding (because it had no need to do so given the basis on which it decided the appeal), that a Medicare supplier "has a property interest in getting paid for its equipment and services." *Id.*  And while the Sixth Circuit also noted that the supplier had a "significant" private interest in "payment for services rendered," *id.*, that statement sheds no light on whether the significant interest is a protected property interest.  Whether an interest rises to the level of a protected property interest turns on whether the interest fairly arises from law, rules, regulations, etc. – not on whether the interest is significant to the plaintiff.  Whether the interest is significant to the plaintiff becomes relevant only *after* it is first determined that the interest is a protected property interest. *See id.* (assessing significance of interest to plaintiff when answering the second question in the due process analysis – *i.e.*, how much process is due.)

For all of these reasons, the Court concludes that Plaintiffs have failed to carry their burden of identifying a property interest that is protected by the Due Process Clause.  The Court will therefore dismiss the Due Process Suspension Claim.

## C

The Court next considers the merits of the portion of the Recoupment Claims seeking to compel the Secretary to issue an Overpayment Determination.  The Secretary argues that that claim is not plausible because Plaintiffs have failed to allege that the Secretary actually recouped funds from Plaintiffs.  The Secretary notes that a "recoupment" is "by definition, the 'recovery' of an 'outstanding Medicare debt.'" (Mot., ECF No. 31, PageID.546, quoting 42 C.F.R. § 405.370). And the Secretary insists that the allegedly recouped funds were not recovered to satisfy an outstanding debt, but rather are being held in escrow while the Secretary determines whether there is an outstanding debt. (*See id*.)

But this argument fails to take Plaintiffs' allegations as they are pleaded in the First Amended Complaint.  Indeed, Plaintiffs allege that even though the Secretary did not make a formal Overpayment Determination, he effectively determined that Plaintiffs owed an outstanding debt and then proceeded to recoup the $95,000 in order to satisfy at least part of that debt.  The Secretary's alternative explanation of why and how the payments were reversed is just that: an alternative explanation. For purposes of a motion to dismiss under Rule 12(b)(6), however, Plaintiffs'

allegations are plausible and must be accepted as true. The Court is satisfied that these allegations are sufficient to state a viable claim that the Secretary did complete a recoupment and that Plaintiffs are therefore entitled to a writ of mandamus compelling the Secretary to issue an Overpayment Determination so that they can begin the administrative appeals process.

## IV

The Court next turns to Plaintiffs' Motion for Partial Summary Judgment. (*See* Plas.' Mot., ECF No. 32.) In that motion, Plaintiffs seek judgment as a matter of law on the Payment Reversal Claims. The Court will deny Plaintiffs' motion as moot in light of the fact that the Court has decided to dismiss the Payment Reversal Claims for lack of subject-matter jurisdiction.

## V

For all of the reasons explained above, **IT IS HEREBY ORDERED** that the Secretary's Motion to Dismiss (ECF No. 31) is **GRANTED IN PART AND DENIED IN PART** as follows:

- The motion is **GRANTED** with respect to Plaintiffs' Due Process Suspension Claim. That claim is **DISMISSED WITH PREJUDICE**.

- The motion is also **GRANTED** with respect to the remainder of Plaintiffs' claims *except* for the component of the Recoupment Claims in which Plaintiffs seek to compel the Secretary to issue an

Overpayment Determination. Those claims are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

- Thus, the only remaining claim in this case is the portion of the Recoupment Claims in which Plaintiffs seek to compel the Secretary to issue an Overpayment Determination.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 32) is **TERMINATED AS MOOT**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 21, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 21, 2023, by electronic means and/or ordinary mail.

s/Amanda Chubb (in the absence of Holly A. Ryan)
Case Manager
(313) 234-2644
